IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIE J. ABNEY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-4435** |
| **v.** | : | |
| | : | |
| **SEPTA** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                                              FEBRUARY 4, 2022

## MEMORANDUM OPINION

**INTRODUCTION**

Willie J. Abney ("Plaintiff") filed an employment discrimination complaint against his employer, SEPTA ("Defendant" or "SEPTA"), in which he asserted claims of unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Con. Stat. § 951 *et seq.* [ECF 1]. Specifically, Plaintiff asserts that his February 19, 2020 demotion was in retaliation for numerous complaints he made to his employer between May 2017 and April 2019.

Presently, before this Court is Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, in which Defendant argues that Plaintiff has not met the *prima facie* requirements of a retaliation claim. [ECF 9]. Plaintiff opposes the motion. [ECF 11].[1] The issues presented in the motion are fully briefed and, therefore, this matter is ripe for disposition. For the reasons set forth herein, Defendant's motion for summary judgment is granted, and judgment is entered in favor of Defendant on Plaintiff's retaliation claims.

---

[1] This Court has also considered Defendant's reply. [ECF 12].

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant—here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motion are summarized as follows:[2]

Plaintiff started working for SEPTA in 1992. He was promoted to the position of Assistant Director of Station Operations in 2014, a position classified as a Supervisory, Administrative, or Management ("SAM") employee, and subject to SEPTA's SAM Disciplinary and Appeal Policy. As an Assistant Director, Plaintiff directly or indirectly supervised approximately 400 Maintenance Custodians, Station Managers, and Cashiers.

In May 2017, Plaintiff reported an incident to SEPTA's Equal Employment Opportunity/Affirmative Action/Employee Relations Department ("EEO Department") involving a Maintenance Custodian under his supervision who had failed to comply with SEPTA's uniform policy. Specifically, the Maintenance Custodian wore a headscarf and refused to remove it when requested to do so by Plaintiff. Plaintiff informed the Maintenance Custodian that if she did not comply with SEPTA's uniform policy, she would be barred from work pursuant to SEPTA's rules. Carol O'Neal, the Employee Relations Manager in charge of religious accommodations, interviewed Plaintiff, informed him that the head scarf was a religious accommodation, and instructed him not to move forward with a write-up. She also recommended to Plaintiff that he attend EEO training.

In an email dated May 25, 2017, Plaintiff complained to his supervisor, Darryl Wade, about what he perceived as the unfair and inappropriate comments Ms. O'Neal made to Plaintiff during the course of her interview of Plaintiff regarding the Maintenance Custodian's religious accommodation request. Notably, Plaintiff's email makes no reference to any discrimination ***against him*** or in his workplace based on race, color, religion, sex, or national origin.

On March 7, 2018, a Cashier submitted a complaint to SEPTA's EEO Department regarding Plaintiff. The Cashier, who was pregnant, alleged that Plaintiff confronted and "badgered" her regarding her uniform and taking breaks, despite the Cashier's immediate supervisor having previously approved the breaks due to her pregnancy. Ekaette Oduok, an EEO/Employee Relations Manager, investigated the Cashier's complaint and found that the evidence was insufficient to substantiate a violation of SEPTA's Equal Employment Opportunity and

---

[2] These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any facts are disputed, such disputes will be noted and, if material, will be construed in Plaintiff's favor pursuant to Rule 56.

Affirmative Action Policy *by Plaintiff*, but noted that "the investigation revealed that there have been numerous complaints received by this department regarding the behavior exhibited by [Plaintiff] in [his] managerial role."

On April 18, 2018, another Maintenance Custodian submitted a complaint to SEPTA's EEO Department, alleging that Plaintiff harassed her while she was taking a break to catch her breath due to her asthma. Jennifer Hinderliter, an EEO/Employee Relations Manager, investigated the complaint and found that the evidence did not violate any EEO policies, but noted that "the evidence reflects that [Plaintiff] might have been more heavy-handed than might have been necessary . . . this Department has received several complaints regarding [Plaintiff's] interactions with employees." Ms. Hinderliter also recommended that Plaintiff "reflect on the EEO training" that he recently received and suggested that if complaints of a similar nature continue and are substantiated, "external training or other options may be considered for your professional development." Plaintiff denied the substance of the underlying complaints against him.

On October 30, 2018, Plaintiff lodged a Workplace Violence Complaint against one of his subordinates, who verbally threatened Plaintiff after Plaintiff gave the employee his annual performance evaluation. SEPTA advised Plaintiff that after an investigation of the incident, it could not substantiate Plaintiff's allegations.

On December 21, 2018, Plaintiff submitted a written "Intra-Office Memorandum" to Jacqueline Hopkins, Director of SEPTA's EEO Department, complaining of "harassment and retaliation" by representatives of the EEO office. In this memo, Plaintiff complained of how he was treated by members of the EEO office who investigated various workplace investigations of complaints *against Plaintiff*. Notably, Plaintiff's memo makes no reference to any discrimination *against him* or in his workplace based on race, color, religion, sex, or national origin.

On April 29, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against SEPTA, asserting claims of retaliation by SEPTA's EEO officials. In the charge, Plaintiff described his complaint to SEPTA regarding the October 2018 incident in which he was verbally threatened (described above) and the two intra-office memoranda that SEPTA provided Plaintiff following its investigation of various complaints (described above) made against him. Plaintiff also asserted that SEPTA retaliated against him by recommending him for Respect and Civility in the Workplace Training because SEPTA was unable to substantiate the complaints lodged against him by other employees. Notably, Plaintiff's EEOC charge of discrimination makes no reference to any discrimination *against him* or in his workplace based on race, color, religion, sex, or national origin.

3

On August 14, 2019, a female Cashier lodged a complaint against Plaintiff for harassment and intimidating behavior. The Cashier alleged that Plaintiff asked her for her personal cell phone number, requested a picture for her contact on his phone, and sent her inappropriate text messages. Plaintiff denied the allegations. SEPTA's investigation revealed a number of inappropriate text messages from Plaintiff to the Cashier.

On October 10, 2019, Ekaette Odouok, EEO/Employee Relations Manager, provided a written summary of her investigation of the Cashier's harassment complaint against Plaintiff. She concluded that the evidence did not substantiate a direct violation of EEO policies, but that it evidenced "conduct unbecoming of an employee in a leadership role" and conduct that was "unprofessional and inappropriate." She recommended that management take appropriate action against Plaintiff.

By memorandum dated February 19, 2020, Robert Toomer, Director of Station Operations, provided his findings to Plaintiff. In the memo, Mr. Toomer concluded that: (1) Plaintiff had engaged in unprofessional and inappropriate actions when he sent flirtatious text messages to his subordinate; (2) Plaintiff provided untruthful statements during the EEO Department's investigation regarding the existence and content of his text messages; and (3) Plaintiff made an inappropriate and "impulsive decision" to confront the subordinate while she was alone in her cashier booth regarding the report that she had referred to him as her "buddy." Based on these conclusions, Mr. Toomer recommended that Plaintiff be demoted.

Following several rounds of administrative appeal, SEPTA demoted Plaintiff from his position as an Assistant Director to that of Dispatcher, resulting in a salary reduction of approximately $40,000 a year. Prior to this demotion, Plaintiff had received no disciplinary action.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under

Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

As noted, Plaintiff asserts claims for retaliation under Title VII and the PHRA premised on his contention that his 2020 demotion was in retaliation for various complaints he voiced between

May 2017 and April 2019.  Defendant moves for summary judgment on the grounds that, *inter alia*, Plaintiff has failed to produce evidence sufficient to show that he engaged in the requisite protected conduct.  This Court agrees with Defendant.

Retaliation claims asserted under both Title VII and the PHRA are subject to the *McDonnell Douglas* burden-shifting analysis.  *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).[3]  Under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* case of retaliation by showing that:  (1) he engaged in protected activity; (2) Defendant took a materially adverse employment action against him after or contemporaneous with his protected activity; and (3) there is a causal connection between his participation in the protected activity and Defendant's adverse action.  *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).  A materially adverse action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  A causal connection between the protected activity and adverse action may be inferred from:  (1) an unusually suggestive temporal proximity between the two; (2) an intervening pattern of antagonism following the protected conduct; or (3) the proffered evidence examined as a whole.  *Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).[4]

---

[3]     Retaliation claims under Title VII and the PHRA have the same legal requirements.  *See Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006).

[4]     If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to advance a legitimate, non-retaliatory reason for its action.  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997).  If Defendant meets this burden, the burden shifts back to Plaintiff to show pretext by providing evidence by which a factfinder could reasonably (1) disbelieve Defendant's proffered legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's action.  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  Again, this requires Plaintiff to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765.

Defendant argues that Plaintiff has failed to meet his *prima facie* burden of showing that he engaged in the requisite protected activity.  To fall within Title VII's protection, the protected activity must relate to an illegal, discriminatory employment practice under Title VII.  *Curay-Cramer v. Ursuline Acad. of Wilmington, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).  Title VII prohibits employment discrimination based on race, color, sex, religion, or national origin.  42 U.S.C. § 2000e-2.  "A general complaint of unfair treatment does not translate into a charge of illegal [] discrimination."  *Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 485 (E.D. Pa. 2013) (quoting *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)).  To qualify as protected activity, the employee's complaint must identify the employer's unlawful practice by either explicitly or implicitly identifying the protected characteristic.  *Barber*, 68 F.3d at 702.

Here, Plaintiff points to the following complaints to support the requisite protected activity:

- May 25, 2017 e-mail from Plaintiff to supervisors Darryl Wade and Leslie A. Hickman:  Plaintiff complained about a SEPTA EEO official's unfair treatment and inappropriate comments toward him during the course of the EEO's investigation of a complaint *against Plaintiff* about his response to a religious accommodation request.  Plaintiff does not assert any discrimination *against him* or in his workplace based on race, color, religion, sex, or national origin. (ECF 11-6, p. 2);

- October 30, 2018 Workplace Violence Report:  Plaintiff described an incident in which David F. Smith verbally threatened Plaintiff after being provided his performance evaluation.  Plaintiff does not assert any discrimination *against him* or in his workplace based on race, color, religion, sex, or national origin. (ECF 11-6, p. 6; ECF 11-8, pp. 33–34);

- December 21, 2018 Intra-Office Memorandum from Plaintiff to Jacqueline Hopkins:  Plaintiff complained about the EEO Department's investigations of various allegations of discriminatory conduct *against Plaintiff* by his subordinates.  Plaintiff does not assert any discrimination *against him* or in his workplace based on race, color, religion, sex, or national origin. (ECF 11-6, pp. 5–7); and

7

- April 29, 2019 EEOC Charge of Discrimination:  Plaintiff alleged that he "was retaliated against when [SEPTA] officials advised [him] that they could not substantiate the complaints lodged against [him] by numerous employees . . . ."  Plaintiff does not assert any discrimination *against him* or in his workplace based on race, color, religion, sex, or national origin.  (ECF 11-6, pp. 32–34).

Though filing a complaint/charge of discrimination with the EEOC can constitute the requisite protected activity, the United States Court of Appeals for the Third Circuit has unequivocally held that the filing of a "facially invalid" complaint with the EEOC is not protected under the anti-retaliation provisions of Title VII.  *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006).  To be facially valid, the EEOC complaint must allege "one or more prohibited grounds in order to be protected under Title VII.  But we cannot dispense with the requirement that the plaintiff allege prohibited grounds."  *Id.* at 267.  Here, Plaintiff's EEOC complaint did not expressly or implicitly assert discrimination on any of Title VII's prohibited grounds.  As such, pursuant to *Slagle*, Plaintiff's EEOC complaint is facially invalid and, thus, cannot constitute the requisite protected activity.

The reasoning and holding of *Slagle* apply equally to Plaintiff's other alleged complaints.  All of Plaintiff's purported complaints to management are complaints about how Plaintiff was treated when he was the subject of the discrimination charges lodged by other employees.  Plaintiff was neither the complainant nor the alleged victim in any of these incidents.  Rather, he was the alleged wrongdoer of the discriminatory conduct.  Plaintiff has provided no legal basis under which such complaints by the alleged wrongdoer constituted protected conduct under Title VII.  Indeed, recognizing such complaints as protected conduct would, in fact, turn the intended protections of Title VII on their heads.  Under Plaintiff's proffered expansion of Title VII's protections, a person who was fired or demoted for engaging in discriminatory conduct could assert a viable retaliation claim under Title VII merely because he participated in the proceedings/investigations against him.

This Court is unaware of any support for such a broad and nonsensical interpretation. Regardless, none of Plaintiff's alleged complaints contains explicit or implicit charges of discrimination under any of Title VII's protected grounds. *See Barber*, 68 F.3d at 701–01 (affirming grant of summary judgment on retaliation claim where plaintiff's complaint to human resources did not "explicitly or implicitly allege that age was the reasons for the alleged unfairness"); *Curay-Cramer*, 450 F.3dat 135 (affirming dismissal of retaliation claim where plaintiff's complaint alleged unfair treatment unconnected to any protected ground); *Washington v. SEPTA*, 2021 WL 2649146, at *29 (E.D. Pa. June 28, 2021) (granting summary judgment on retaliation claim where complaints "neither explicitly nor implicitly allege[d] race discrimination or hostile work environment"). As such, Plaintiff has not met his summary judgment burden with respect to the requisite protected activity. Accordingly, Defendant's motion for summary judgment is granted as to all of Plaintiff's retaliation claims.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claims under Title VII and the PHRA, and judgment is entered in favor of Defendant on these claims. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.